Name _Aaron Siri, Esq. (Admitted PHV);  Siri & Glimstad LLP_

Address _200 Park Avenue, 17th Floor_

City, State, Zip _New York, NY 10166_

Phone _(213) 376-3739_

Fax _(646) 417-5967_

E-Mail _aaron@sirillp.com_

☐ FPD    ☐ Appointed    ☐ CJA    ☐ Pro Per    ☒ Retained

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT MASSETH and HOLLY MASSETH, individually and on behalf of their minor child, J.D., <br><br> PLAINTIFF(S), <br><br> v. <br><br> WILLIE J. JONES III, et al., <br><br> DEFENDANT(S). | CASE NUMBER: <br><br> 5:21-cv-01408 JGB (SPx) <br><br><br> **NOTICE OF APPEAL** <br> **(PRELIMINARY INJUNCTION APPEAL)** |

NOTICE IS HEREBY GIVEN that _____ROBERT MASSETH and HOLLY MASSETH_____ hereby appeals to
*Name of Appellant*
the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify):
   Minute Order denying Plaintiffs' Motion for
   Preliminary Injunction

☐ Judgment (specify):

☐ Other (specify):

Imposed or Filed on _November 9, 2021_ . Entered on the docket in this action on _November 10, 2021_ .

A copy of said judgment or order is attached hereto.

| | |
|---|---|
| _11/30/2021_ | /s/ Aaron Siri |
| Date | Signature |
| | ☐ Appellant/ProSe    ☒ Counsel for Appellant    ☐ Deputy Clerk |

**Note:**    The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party.  Also, if not electronically filed in a criminal case,  the Clerk shall be furnished a sufficient number of copies of the Notice of  Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 6. Representation Statement

*Instructions for this form:* <http://www.ca9.uscourts.gov/forms/form06instructions.pdf>

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:

> Robert Masseth
> Holly Masseth

Name(s) of counsel (if any):

> See Attachment 1 hereto with names, addresses, telephone numbers and email addresses of all Counsel for Appellants.

Address:

Telephone number(s):

Email(s):

Is counsel registered for Electronic Filing in the 9th Circuit?   ● Yes   ○ No

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:

> Willie J. Jones III, in his official capacity as the principal of Serrano High School, Snowline Joint Unified School District, and The Snowline JUSD Board of Trustees a/k/a The Snowline JUSD Governing Board a/k/a The Snowline Board of Education

Name(s) of counsel (if any):

> Thomas M. Madruga
> Edward B. Kang
> Olivarez Madruga Lemieux O'Neill, LLP

Address: 500 South Grand Avenue - 12th Floor

Telephone number(s): 213-744-0099

Email(s): tmadruga@omlolaw.com and ekang@omlolaw.com

*To list additional parties and/or counsel, use next page.*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 6**                                    *1*                          *New 12/01/2018*

Continued list of parties and counsel: *(attach additional pages as necessary)*

## **Appellants**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Is counsel registered for Electronic Filing in the 9th Circuit?   ○ Yes   ○ No

## **Appellees**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 6**                          *2*                          *New 12/01/2018*

# Attachment 1

SIRI & GLIMSTAD LLP
Aaron Siri (Admitted Pro Hac Vice)
Email: aaron@sirillp.com
Elizabeth A. Brehm (Admitted Pro Hac Vice)
Email: ebrehm@sirillp.com
200 Park Avenue
Seventeenth Floor
New York, NY 10166
Telephone: 212-532-1091
Facsimile: 646-417-5967

Caroline Tucker (SBN 261377)
Email: ctucker@sirillp.com
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
Telephone: 213-376-3739
Facsimile: 646-417-5967

CHRIS WIEST ATTORNEY AT LAW, PLLC
Chris Wiest (Admitted Pro Hac Vice)
Email: chris@cwiestlaw.com
25 Town Center Blvd, STE 104
Crestview Hills, KY 41017
Telephone: 513-257-1895
Facsimile: 859-495-0803

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 21-1408 JGB (SPx)** | Date | November 9, 2021 |
|---|---|---|---|
| Title | ***Robert Masseth, et al. v. Willie J. Jones III, et al.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

Proceedings:    **Order (1) DENYING Plaintiffs' Motion for Preliminary Injunction (Dkt. No. 8)**

Before the Court is a Motion for Preliminary Injunction filed by Plaintiffs Robert Masseth and Holly Masseth.  ("Motion," Dkt. No. 8.)  On October 25, 2021, the Court heard argument on the Motion.  After considering the papers filed in support of and in opposition to the Motion, and oral argument, the Court DENIES the Motion.

## I.    BACKGROUND

On August 19, 2021, Plaintiffs Mr. and Mrs. Masseth (the "Masseths") filed a complaint, individually and on behalf of their minor child J.D., against Defendants Willie J. Jones III, Snowline Joint Unified School District, and the Snowline Joint Unified School District Board of Trustees (collectively, "School Defendants").  ("Complaint," Dkt. No. 1.)  The Complaint alleges four causes of action: (1) violation of the Fourteenth Amendment right to parental choice, bodily integrity, and informed consent under 42 U.S.C. § 1983; (2) violation of the Fourteenth Amendment right to life and liberty under 42 U.S.C. § 1983; (3) violation of the First Amendment right to the freedom of religion under 42 U.S.C. § 1983; and (4) violations of all rights provided by the Fourteenth Amendment and First Amendment under 42 U.S.C. § 1983. (See Compl.)

//
//
//
//

The Masseths filed the Motion on August 20, 2021.  In support of the Motion, they filed the following documents:

- Memorandum of Law in Support of the Motion ("Memorandum," Dkt. No. 8-1);
- Declaration of Caroline Tucker, Esq. ("Tucker Declaration," Dkt. No. 8-2);
- Declaration of Robert Masseth and Holly Masseth ("Masseths Declaration," Dkt. No. 8-3); and
- Declaration of Nancy McGuire, M.D. ("McGuire Declaration," Dkt. No. 8-4).

School Defendants filed an opposition on September 27, 2021.  ("Opposition," Dkt. No. 27.)  In support of the Opposition, School Defendants filed the following documents:

- Defendants' Evidentiary Objections to Evidence Submitted in Support of the Motion ("Evidentiary Objections," Dkt. No. 27-1); and
- Declaration of Edward B. Kang ("Kang Declaration," Dkt. No. 27-2).

The Masseths replied on October 12, 2021.  ("Reply," Dkt. No. 29).  The Masseths filed the following additional documents with the Reply:

- Declaration of Aaron Siri, Esq. ("Siri Declaration," Dkt. No. 30);
- Supplemental Declaration of Caroline Tucker, Esq. ("Supplemental Tucker Declaration," Dkt. No. 31); and
- Plaintiffs' Responses to the Evidentiary Objections ("Evidentiary Responses," Dkt. No. 32).

## II.  FACTS

At issue is California's law requiring students to receive vaccinations against various childhood diseases, including pertussis, as a condition for school attendance (the "Policy").  Cal. Health & Safety Code §§ 120325–120380; Cal. Code Regs. Tit. 17, § 6000 et seq.

Pertussis, or "whooping cough," is an infection of the respiratory system "marked by a severe hacking cough followed by a high-pitched intake of breath that sounds like 'whoop.'" (Tucker Decl., Ex. A at 1.)  It is caused by the bacterial Bordatella pertussis and is contagious. (McGuire Decl. ¶ 10.)  Cases of pertussis have steadily increased since the 1970s.  (Id. ¶ 19.)  In 2010 and 2014, California experienced two of the state's largest pertussis epidemics.  (Id. ¶ 20.)

In California, a student may not be "unconditionally" admitted to any private or public school unless he or she has been "fully immunized" against pertussis.[1]  Cal. Health & Safety Code § 120335(b).  For students entering high school, "at least one dose of pertussis-containing vaccine is required on or after the seventh birthday."  17 Cal. Code Regs. § 6025(c), Table B n.8.

---

[1] Students must also get vaccinated for diseases such as diphtheria, measles, mumps, rubella, tetanus, hepatitis B, and chickenpox.  Cal. Health & Safety Code § 120335(b).

A student may receive a medical exemption "if the parent or guardian files with the governing authority a written statement by a licensed physician and surgeon to the effect that the physical condition of the child is such, or medical circumstances relating to the child are such, that immunization is not considered safe."  Cal. Health & Safety Code § 120370(a)(1).

In 2015, the California legislature passed Senate Bill ("SB") 277, which removed all exemptions based on "personal beliefs" from school immunization requirements.  (Mot. at 11.)  This included personal belief exemptions previously available for the pertussis vaccine under the Policy.  SB 277 continued to allow medical exemptions.  SB 277 took effect on January 1, 2016.

In 2020, California amended the Policy to authorize the revocation of certain medical exemptions to school immunization requirements.  The revised law revoked "[m]edical exemptions "issued prior to January 1, 2020" and "by a physician or surgeon that has been subject to disciplinary action by the Medical Board of California or the Osteopathic Medical Board of California."  Cal. Health & Safety Code § 120372(d)(4).

J.D. is a high school student whose medical exemption was revoked pursuant to this change to the Policy.  J.D. attends Serrano High School, which is part of the Snowline Joint Unified School District (the "District").  (Masseths Decl. ¶ 2; Compl. ¶¶ 13–16.)  When J.D. was two months old, she received one dose of the diphtheria, tetanus, and acellular pertussis ("DTaP") vaccine and experienced adverse reactions.  (Masseths Decl. ¶ 4.)  These effects included persistent and inconsolable high-pitched crying and screaming, stiffening of her body, and decreased consciousness.  (Id.)  J.D.'s pediatrician believed that J.D. had a serious adverse reaction to the pertussis component of the DTaP vaccine.  (Id. ¶ 5.)  As a result, J.D. did not receive any additional doses of the pertussis vaccine and received alternate vaccines for diphtheria and tetanus instead.  (Id. ¶ 5; McGuire Decl. ¶ 4.)  J.D. also received a medical exemption to the pertussis vaccine to attend school.  (Masseths Decl. ¶ 4.)

On June 1, 2021, the District notified the Masseths that J.D.'s medical exemption was being revoked.  (Id., Ex. 1.)  For J.D. to start school in August 2021, the District required J.D. to start her immunization requirements or to receive a new medical exemption from her doctor.  (Id.)  The Masseths attempted to obtain a new medical exemption from J.D.'s current physician, but the physician refused to issue one.  (Masseths Decl. ¶ 7.)

The Masseths challenge School Defendants' enforcement of the Policy against J.D.  They argue that it forces them to choose between facing expulsion and vaccinating J.D. with a potentially harmful vaccine so that she can attend school.  The Masseths assert that enforcement of the Policy violates their constitutional rights under the Fourteenth Amendment and First Amendment.  (See Mot.)  The Masseths seek to enjoin School Defendants from enforcing the Policy to the extent it requires the pertussis vaccine to attend school.  (Mot. at 1.)

//
//
//

## III.  LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right."  Munaf v. Geren, 553 U.S. 674, 689 (2008) (citations omitted).  An injunction is binding only on parties to the action, their officers, agents, servants, employees, and attorneys and those "in active concert or participation" with them.  Fed. R. Civ. P. 65(d)(2).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  Under the Ninth Circuit's "sliding scale" approach to preliminary injunctions, the four "elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another."  All. For the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).  "[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  Id. at 1132 (internal quotations omitted).

## IV.  DISCUSSION

### A.  Local Rule 7-3: Meet and Confer Requirement

The Court first addresses School Defendants' assertion that the Masseths have failed to meet and confer on the Motion pursuant to Local Rule 7-3.  As the Masseths correctly note, preliminary injunctions are explicitly excepted from the requirement that counsel for the parties meet and confer prior to filing any motion.  L.R. 7-3.  Accordingly, the Court declines to dismiss the Motion on this basis.

### B.  Request for Judicial Notice

The Masseths request the Court to take judicial notice of digital publications or webpages to which they cite in the Motion.  (Mot. at 1 n.1.)  The publications and webpages are as follows:

(1)     "Appendix E – Vaccine Coverage Levels" on the Center for Disease Control's ("CDC") website;
(2)     An unidentified webpage on the California Department of Public Health website;
(3)     The landing page for vaccine claims on the United States Court of Federal Claims website;
(4)     An information sheet on the Tdap vaccine on the CDC's web site;
(5)     Two unidentified webpages on the U.S. Food and Drug Administration's ("FDA") website;
(6)     A congressional committee report on the Vaccine Injury Compensation Program on Congress.gov;

**CIVIL MINUTES—GENERAL**                Initials of Deputy Clerk NP

(7)     Two articles on the pertussis vaccine in non-governmental, medical publications;

(8)     One article on placebo control studies in a non-governmental, medical publication;

(9)     An FDA presentation on the agency's Vaccine Adverse Events Reporting System ("VAERS");

(10)    A grant report on VAERS submitted to the Agency for Healthcare Research and Quality at the U.S. Department of Health and Human Services ("HHS");

(11)    An unidentified webpage on the California State Assembly Office of the Chief Clerk's website; and

(12)    The bill text of California Senate Bill No. 277 ("SB 277").

The Court "may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Judicial notice is appropriate for documents "made publicly available by governmental entities … and neither party disputes the authenticity of the web site[] or the accuracy of the information displayed therein." Japanese Village, LLC v. Federal Transit Admin., 843 F.3d 445, 454 (9th Cir. 2016) (quoting Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998–99 (9th Cir. 2010)); see also In re Amgen Inc. Sec. Litig., 544 F. Supp. 2d 1009, 1023 (C.D. Cal. 2008); County of Santa Clara v. Astra USA, Inc., 401 F. Supp. 2d 1022, 1024 (N.D. Cal. 2005) (taking judicial notice of a publication in the Federal Register and of a description on an HHS web site).

School Defendants do not object to the Masseths' requests. Because the documents in Item Nos. 3, 4, 6, 9, and 10 are documents made publicly available by governmental entities, the Court GRANTS the request to notice these documents.

The documents in Item Nos. 1, 2, 5, and 11 appear to be documents on governmental entities' websites that are ordinarily appropriate for judicial notice. However, the Masseths have not provided accurate links to these documents, and the Court cannot discern their content. Accordingly, the Court DENIES the request to notice these documents.

The documents in Item Nos. 7 and 8 are articles from medical publications. Though School Defendants have not objected to these documents, they contain facts that "are subject to reasonable dispute." L.A. All. for Human Rights v. County of Los Angeles, 14 F.4th 947, 957 (9th Cir. 2021); Fed. R. Evid. 201(b). Accordingly, the Court DENIES the request to notice these documents.

Finally, the document in Item No. 12 is part of a statute. "Federal courts may take judicial notice of public records, including statutes." United States v. Lopez, 4 F.4th 706, 731 (9th Cir. 2021). Accordingly, the Court GRANTS the request to notice SB 277.

//
//
//
//

## C. Evidentiary Objections

School Defendants assert twenty-five objections to evidence the Masseths submitted in support of the Motion. (See Evid. Objections.)  School Defendants object to the six exhibits attached to the Tucker Declaration and numerous paragraphs within the McGuire Declaration on the basis of foundation, improper expert opinion, and hearsay, respectively.  (Id.)

"Due to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings."  Herb Reed Enters., LLC v. Fla. Entm't Mgmt. Inc., 736 F.3d 1239, 1250 n.5 (9th Cir. 2013).  For example, the Court may "consider hearsay."  Johnson v. Couturier, 572 F.3d 1067, 1083 (9th Cir. 2009); see also Flynt Distrib. Co., Inc. v. Harvey, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The trial court may give even inadmissible evidence some weight, when to do so serves the purpose preventing irreparable harm before trial.").  However, the Court need not do so when "there is not the same type of urgency at issue."  Guilfoyle v. Beutner, et al., 2021 WL 4594780, at *8 (C.D. Cal. Sept. 14, 2021) (sustaining hearsay objections).

### 1. Exhibits to the Tucker Declaration

School Defendants object to Exhibits A through F of the Tucker Declaration on the basis of hearsay and lack of foundation.

Exhibit A of the Tucker Declaration is a market report on the DTaP vaccine market. (Tucker Decl., Ex. A.)  Market reports are excepted from the rule against hearsay.  Fed. R. Evid. ("FRE") 803(17).  The Tucker Declaration lays the foundation for this report.  Newspapers and periodicals are also self-authenticating documents.  FRE 902(6).  Accordingly, the Court OVERRULES the objections to Exhibit A.

Exhibit B of the Tucker Declaration is a printout of data from the CDC's VAERS database based on a manual search.  (Tucker Decl., Ex. B.)  A compilation of data is not a declarant's statement and not hearsay.  Accordingly, the Court OVERRULES the hearsay objection.  The Masseths assert that the database report is an official publication and self-authenticating under FRE 902(5). (Evid. Resp. at 3.)  The Court disagrees.  While the CDC operates the VAERS website, the report the Masseths provide is the result of a manual search of the CDC's electronic database.  When the Court clicks the link provided by the Masseths, the Court does not see the report that is attached as Exhibit B.  As such, the Masseths should have followed the certifications requirements of FRE 902(13).  The Masseths have not done so. (Tucker Decl. ¶ 3.)  Accordingly, the Court GRANTS the lack of foundation objection.

//
//
//
//
//

**CIVIL MINUTES—GENERAL**                    Initials of Deputy Clerk NP

Exhibits C through F are publications about vaccines from the Institute of Medicine ("IOM"). Because these documents are periodicals, statements made in the articles are excepted from the rule against hearsay. FRE 803(18). The Tucker Declaration lays the foundation for these documents, which are periodicals under FRE 902(6).[2] Accordingly, the Court OVERRULES these objections.

## 2. McGuire Declaration

School Defendants object to nearly every paragraph in the declaration of Nancy McGuire, M.D., the Masseths' infectious diseases expert, on the basis of hearsay, improper expert opinion, or lack of foundation. Dr. McGuire states that she has "been asked by counsel for Plaintiffs to analyze the allegations and facts in this Action, and opine as to whether, as far as infectious disease is concerned, Plaintiffs' child, J.D., presents a risk to individuals in her school based on her vaccination status." (McGuire Decl. ¶ 8.)

Federal Rule of Evidence 702 allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if four conditions are met: (1) the testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue"; (2) "the testimony is based on sufficient facts or data"; (3) "the testimony is the product of reliable principles and methods"; and (4) "the expert has reliably applied the principles and methods to the facts of the case." FRE 702(a)-(d). To determine the reliability of principles and methods, a court may consider several factors, including whether a theory or technique has been tested, has been subjected to peer review and publication, has a high known or potential rate of error, and "enjoys 'general acceptance' within a 'relevant scientific community.'" Kumho Tire Co. v. Carmichael, 526 U.S.137, 149–50 (1999) (quoting Daubert v. Merrell Dow Pharm., 509 U.S. 579, 592–94 (1993)). "The proponent of the expert testimony has the burden of establishing that the expert's testimony meets the admissibility requirements by a preponderance of the evidence." Guilfoyle, 2021 WL 4594780, at *11 (citing FRE 104 and Bourjaily v. United States, 483 U.S. 171, 175 (1987)). "[D]istrict courts have 'broad latitude' to determine whether expert testimony is sufficiently reliable to be admitted." Ollier v. Sweetheart Union High Sch. Dist., 768 F.3d 843, 859 (9th Cir. 2014).

School Defendants object to Paragraphs 9[3] and 33 for lack of foundation and improper expert opinion. In these paragraphs McGuire states that "J.D. poses no increased risk compared to her vaccinated peers of transmitting pertussis to others." There is no evidence in the declaration or elsewhere that Dr. McGuire has personally evaluated J.D. and for factors related to pertussis or that she is qualified to testify about any specific risks J.D. poses based on her particular vaccination status. Accordingly, the Court SUSTAINS these objections.

---

[2] While the Masseths claim that the IOM is a quasi-public entity whose publications are "official publications," the Court finds that they are more akin to periodicals.

[3] The parties cite to Paragraph 8 of the McGuire Declaration when discussing this objection, but the quoted passage is from Paragraph 9. Accordingly, the Court assumes the parties mean Paragraph 9.

School Defendants object to Paragraphs 11[4], 13, 14, 15, 20, 26, 31, 32, and 33 for lack of foundation and improper expert opinion. In each of these paragraphs, Dr. McGuire provides opinions on pertussis, the pertussis vaccine, and the transmissibility of pertussis including among students and in schools. School Defendants argue that Dr. McGuire has not offered testimony regarding her experiences or qualifications in dealing with pertussis or the pertussis vaccine. The Masseths point to Dr. McGuire's resume and contend that her experiences as an infectious disease doctor since 1984 qualify her to speak about pertussis. The Court agrees with School Defendants that the Masseths' evidence does not confidently establish Dr. McGuire's expertise in pertussis. None of Dr. McGuire's presentations or paper topics focus on pertussis or infectious disease in children. (McGuire Decl., Ex. 1.) The Masseths do not claim that Dr. McGuire has ever given testimony in other settings as an expert on pertussis or the pertussis vaccine. Nonetheless, the Court finds that Dr. McGuire's experiences as a doctor in infectious diseases and internal medicine make it more likely than not that she is qualified to opine on pertussis and the pertussis vaccine. Accordingly, the Court OVERRULES these objections.

School Defendants object to Paragraphs 16, 17, 18, 21, 22, 23, 25, and 27 for lack of foundation, improper expert opinion, and hearsay. Because the lack of foundation and improper expert opinion objections are based on Dr. McGuire's qualifications regarding pertussis and the pertussis vaccine, the Court OVERRULES these objections. School Defendants also object to Dr. McGuire's reference to or reliance on "[t]he medical literature" in these paragraphs as hearsay. Paragraph 16 references "medical literature" without a citation to a specific source, whereas Paragraphs 17 and 18 do not reference any medical literature. Under the more relaxed evidentiary standards at the preliminary injunction stage, the Court finds that Dr. McGuire may reasonably rely on medical literature generally to form her opinion. Accordingly, the Court OVERRULES these objections. Paragraphs 21, 22, 25, and 27 reference information from specific studies published in <u>Pediatrics</u>, <u>Vaccine</u>, <u>PNAS</u>, and <u>Frontiers in Immunology</u>. These publications are reliable authorities, on which Dr. McGuire may reasonably rely to form her opinion. Accordingly, the Court OVERRULES these objections.

School Defendants object to Paragraphs 19, 24, 28, 29, and 30 for lack of foundation, improper expert opinion, and hearsay. For the reasons discussed above, the Court OVERRULES the lack of foundation and improper expert opinion objections. School Defendants also object to various references to vaccine information on the website for Children's Hospital of Pennsylvania ("CHOP") and the CDC. In Paragraph 19, the link to the CDC website is incorrect. Because the Court is unable to confirm the source relied upon by Dr. McGuire, the Court SUSTAINS the hearsay objection for Footnote 2 of Paragraph 19. The webpage on CHOP's website referenced in Paragraph 19 contains specific citations and is akin to a pamphlet. The Court OVERRULES the remaining objections to Paragraph 19. References to the CDC website fall within the public records exception to hearsay. Accordingly, the Court OVERRULES the hearsay objections to Paragraphs 24, 28, 29, and 30.

---

[4] The parties cite to Paragraph 10 of the McGuire Declaration, but the quoted passage is from Paragraph 11. Accordingly, the Court assumes the parties mean Paragraph 11.

The Court's above analysis includes all materials contained in footnotes in the McGuire Declaration. Accordingly, the Court does not address School Defendants' objections to the footnotes separately.

## D. Preliminary Injunction

The Masseths request that the Court enjoin School Defendants from enforcing the Policy "to the extent the Pertussis Law requires the pertussis vaccine to attend school." (Mot. at 1.) For the Court to issue a preliminary injunction, Plaintiffs must show that (1) they are likely to succeed on the merits of their claim; (2) they are likely to suffer irreparable harm in the absence of emergency relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). As detailed below, the Masseths do not meet their burden as to any factor.

### 1. Likelihood of Success

The Masseths claim that enforcement of the Policy infringes on (1) their Fourteenth Amendment right to parental choice, bodily integrity, and informed consent, (2) their Fourteenth Amendment right to life and liberty, (3) their First Amendment right to the freedom of religion, and (4) all rights provided by the Fourteenth Amendment and First Amendment. Defendants correctly cite authority generally upholding the constitutionality of vaccination mandates. (Opp'n at 6–9.) However, as the Masseths assert, this is an as-applied challenge, despite language in the Motion that often suggests otherwise.[5] (Reply at 1.) Accordingly, the Court must examine whether the Policy, as applied to the Masseths, infringes on their constitutional rights.

//
//
//

---

[5] For example, the Masseths opine that "the continued viability of Jacobson v. Massachusetts, 197 U.S. 11 (1904), is in doubt." (MTD at 16 n.13.) The Court wonders why an as-applied challenge questions the seminal case recognizing mandatory vaccination laws as proper exercises of the state police power. The Court also notes that after J.D.'s current physician refused to provide a medical exemption for her, the Masseths chose to file suit against School Defendants and file a preliminary injunction soon after. At the October 25, 2021 hearing, Plaintiffs' counsel acknowledged that the Masseths have made no effort to re-seek a medical exemption or to appeal the revocation of the initial exemption. Plaintiff's counsel could provide few details as to why J.D.'s physician denied her a medical exemption or why J.D. faced difficulty receiving one based on her condition. Instead, Plaintiffs' counsel made sweeping assertions against California law regarding medical exemptions, about the need for religious exemptions rather than medical exemptions, and about the inefficacy of the pertussis vaccine. Under these circumstances, the Masseths' claim that they only seek "an injunction that maintains the status quo and allows J.D. to attend her senior year" rings hollow. (Reply at 2.)

---

When a party alleges a violation of a fundamental liberty right under the Fourteenth Amendment, courts apply strict scrutiny, the most rigorous form of constitutional scrutiny of a government action. <u>Nunez v. City of L.A.</u>, 147 F.3d 867, 871 (9th Cir. 1998). Under strict scrutiny, a regulation limiting a fundamental right of substantive due process "may be justified only by a 'compelling state interest,' and that legislative enactments must be narrowly drawn to express only the legitimate state interests at stake." <u>Roe v. Wade</u>, 410 U.S. 113, 155 (1973) (internal citations omitted). However, when the infringed liberty is not a recognized fundamental right, rational basis review applies. <u>Sylvia Landfield Tr. v. City of L.A.</u>, 729 F.3d 1189, 1191 (9th Cir. 2013); <u>Washington v. Glucksberg</u>, 521 U.S. 702, 728 (1997). Under rational basis, the governmental action need only "be rationally related to legitimate government interests" to survive constitutional muster. <u>Glucksberg</u>, 521 U.S. at 728.

### a. Fourteenth Amendment: Violation of Parental Choice, Bodily Integrity, and Informed Consent

The Masseths first claim that the Policy violates their Fourteenth Amendment rights to parental choice, bodily integrity, and informed consent. They assert that the Policy "forc[es] them to choose between having their daughter expelled from her senior year of high school or consent to injecting her with [the pertussis vaccine], a product which could cause her serious injury and which only provides personal and communal protection." (Mot. at 14.) As a result, the Policy impinges on the Masseths' "rights to direct his or her children's medical care," right to "refus[e] unwanted medical treatment" on their child's behalf, and the right to family association. (<u>Id.</u> at 14–15.)

It is true that the Supreme Court "has long recognized that freedom of personal choice in matters of … family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment." <u>Moore v. City of East Cleveland</u>, 431 U.S. 494, 499 (1977). This includes "the liberty of parents and guardians to direct the upbringing and education of children under their control." <u>Pierce v. Soc'y of the Sisters</u>, 268 U.S. 510, 524–35 (1925); <u>see also</u> <u>Meyer v. Nebraska</u>, 262 U.S. 390 (1923). In the Ninth Circuit, this liberty interest extends to "the right of parents to make important medical decisions for their children" under "[t]he right to family association." <u>Mann v. County of San Diego</u>, 907 F.3d 1154, 1161 (9th Cir. 2018) (quoting <u>Wallis v. Spencer</u>, 202 F.3d 1126, 1141 (9th Cir. 2000)).

Similarly, the Court recognizes that "[t]he Fourteenth Amendment protects against the government's interference with 'an individual's bodily integrity.'" <u>P.B. v. Koch</u>, 96 F.3d 1298, 1303 (9th Cir. 1996). "Every violation of a person's bodily integrity is an invasion of his or her liberty." <u>Washington v. Harper</u>, 494 U.S. 210, 237 (Stevens, J., concurring in part and dissenting in part). "The invasion is particularly intrusive if it creates a substantial risk of permanent injury and premature death." <u>Id.</u> "[F]reedom from unwanted medical attention is unquestionably among those principles 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" <u>Cruzan by Cruzan v. Director, Mo. Dep't of Health</u>, 497 U.S. 261, 305 (1990) (Brennan, J., dissenting).

However, a conclusory assertion of a right to parental choice or bodily integrity does not give rise to strict scrutiny for two reasons. First, the Supreme Court has long found that, in the context of compulsory vaccination laws, "the liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint." Jacobson v. Commonwealth of Massachusetts, 197 U.S. 11, 26 (1905). Second, the Court has "required in substantive-due process cases a 'careful description' of the asserted fundamental liberty interest." Glucksberg, 521 U.S. at 721. Whether the Fourteenth Amendment protects the asserted interest "depends on the existence of a fundamental right ingrained in the American legal tradition." Klaassen v. Trustees of Ind. Univ., 7 F. 4th 592, 593 (7th Cir. 2021) (citing Glucksberg, 521 U.S. at 720–22). Accordingly, unless the Masseths provide a careful description of traditionally recognized rights to parental choice and bodily integrity, rational basis review applies. The Court finds that the Masseths' vague and generalized claims fail to meet the requirements of a substantive due process right.

## 1.   Right to Parental Choice

At base, the Masseths assert a right to decline the pertussis vaccine for their daughter J.D. as part of their right to her upbringing. This is not a recognized fundamental right, whether characterized in terms of a parental right to make educational and medical choices for their daughter or a right to bodily integrity. Over a century ago, the Supreme Court recognized the validity of state laws "making the vaccination of children a condition of their right to enter or remain in public schools." Jacobson, 197 U.S. at 32–33 (listing cases). Relying on Jacobson, many courts have held that "there is no fundamental right to refuse vaccination." Williams v. Brown, --- F. Supp. 3d ---, 2021 WL 4894264, at *8 (D. Or. Oct. 19, 2021) (considering a vaccination requirement applied to school staff and teachers and listing cases); see also Klaassen v. Trustees of Ind. Univ., --- F. Supp. 3d ---, 2021 WL 3073926, at *24 (N.D. Ind. July 18, 2021) (listing cases and finding "there is no greater right to refuse a vaccination"). These cases demonstrate that from one hundred years ago to the present, the law's treatment of vaccination mandates applied to schools is consistently one of acceptance.

Courts have also found that parents do not have a fundamental right to refuse vaccinations or disease mitigation measures for their children on the basis that the requirements conflict with what they "reasonably believe[] is best for [the] child." Workman v. Mingo Cnty. Bd. of Educ., et al., 419 F. App'x 348, 356 (4th Cir. 2011); see also Guilfoyle, 2021 WL 4594780, at *16 (finding no fundamental right for parents to not comply with COVID-19 mitigation measures they believed "interfere[d] with their ability to direct their children's upbringing"); Dixon v. De Blasio, --- F. Supp. 3d ---, 2021 WL 4750187, at *11 (E.D.N.Y. Oct. 12, 2021) ("[A]lthough the EEOs prevent unvaccinated individuals from taking their unvaccinated children into 'covered entities,' nothing in the law requires plaintiffs to obtain a vaccine for themselves or their progeny" so as to implicate a right to "raise one's children as one wishes.").

//
//

The Court finds Workman and Guilfoyle instructive.  In Workman, at issue was a state law requiring vaccinations, including against whooping cough, for children to attend school.  Id. at 351.  The plaintiff parent had decided not to vaccinate one of her children after her other child exhibited potentially vaccine-related health problems.  Id.  The parent initially obtained a doctor-issued medical exemption for the unvaccinated child, which was later denied.  Id.  Because of the denial, the child was unable to attend school until the following year at an institution that accepted the denied exemption, and subsequently could not attend schools in her county.  Id.  While the parent asserted the law "violate[d] her substantive due process right to do what she reasonably believes is best for her child," the Fourth Circuit disagreed.  Id. at 355.  The Workman Court held that there is no fundamental "parent's right to refuse to have her child immunized before attending public or private school where immunization is a precondition to attending school."  Id. at 355.

In Guilfoyle, parent plaintiffs asserted that the school district's implementation of COVID-19 mitigation measures, including regular testing, the use of a digital tracking system, and mandatory masking, violated their constitutional rights.  2021 WL 4594780, at *3.  Specifically, the parents claimed these "measures violate[d] their fundamental rights to direct the upbringing of the children as it relates to their education."  Id. at *16.  The court held that the right to parental choice was "not as sweeping" and generally "limited to a parent's right to choose the forum of their children's education."  Id.  Moreover, even if the Fourteenth Amendment recognized a parent's right to direct their child's upbringing, the parents had failed to produce evidence demonstrating the school district's policies infringed on such a right.  Id.

Workman and Guilfoyle demonstrate that parents do not have a fundamental right to override vaccination requirements for their children.  While the Masseths may reasonably believe that not vaccinating J.D. with the whooping cough vaccine is best for her upbringing, they cannot assert a protected liberty interest in doing so.  Accordingly, the Court concludes that the Masseths have not asserted a fundamental right to parental choice.

The Masseths argue that they have a fundamental right to direct J.D.'s medical care, including a right to not subject J.D. to a vaccine they believe could cause her serious injury.  (Mot. at 15.)  However, this argument also fails.  "Parents have a right to make medical decisions for their children, but that right is not absolute."  Guilfoyle, 2021 WL 4594780, at *17 (citing Parham v. J.R., 442 U.S. 584, 604 (1979), and Aviles v. De Blasio, 2021 WL 796033, at *19 (S.D.N.Y. Mar. 2, 2021)).  The Masseths point to no authority to support the right they assert here: a right to not vaccinate their child as a condition for attending school.

The Masseths cite to Parham, but it is inapposite.  In Parham, the parents challenged a state's procedures for admitting children to a mental health facility under procedural due process.  442 U.S. at 596–97.  The Court found that the overriding constitutional right at stake was the child's right to be "free of unnecessary body restraints" and to not be "labeled erroneously" for mental illness.  Id. at 601.  The Court only discussed the parents' interest as part of the interests at stake in the procedural due process analysis and did not establish a fundamental right of parents to make medical decisions.  Id. at 602–04.  Santosky v. Kramer, 455

U.S. 745 (1982), analyzed whether a higher standard of proof was necessary in parental rights termination proceedings. Santosky did not decide any parental rights to direct a child's medical care. Indeed, the Masseths' citation to a dissent in Santosky demonstrates the weakness of their position. Similarly, the Masseths incorrectly extrapolate from a parent's fundamental right to decide who may visit her children in Troxel v. Granville, 530 U.S. 57, 72 (2000), a nonexistent right to direct a child's medical care.

The Masseths contend that Wallis v. Spencer, 202 F.3d 1126 (9th Cir. 2000), recognizes a sweeping right of parents to make important medical decisions for their children. (Mot. at 15.) But Wallis is not so broad. In a child abuse case, the Wallis parents challenged the state's decision to illegally remove their children from their custody, place the children in an institution, and conduct intrusive physical examinations on the children with the parents' consent. Id. at 1131. Under these circumstances, the Ninth Circuit held that parents had a right "to make important medical decisions for their children," as well as "a right arising from the liberty interest in family association to be with their children while they are receiving medical attention." Id. at 1141–42. Here, the Masseths do not contend that the School Defendants can administer the pertussis vaccine to J.D. without their consent. Nor could they, as the School Defendants have no authority to administer vaccines and the Policy does not provide for such a procedure. Ultimately, J.D. could only receive the vaccine from a medical professional with the Masseths' consent. Thus, Wallis is easily distinguishable.

The Court is not unsympathetic to the Masseths' concern for their daughter's health. However, the Masseths' generalized assertions of a fundamental right to parental choice, or even to parental choice over their children's medical care, does not provide a careful description. They further fail to demonstrate that a parent's right to prevent their child from receiving a mandatory vaccine is a historically recognized right, as required under Glucksberg. Further, the Masseths have failed to produce evidence showing that School Defendants infringed on such a right. Accordingly, no right to parental choice or to medical decision making is implicated here.

### 2.  Right to Bodily Integrity

The Court also finds that the Masseths fail to assert a fundamental right to bodily integrity. In Jacobson, the Supreme Court rejected the argument that "the execution of [a compulsory vaccination] law against one who objects to vaccination, no matter for what reason, is nothing short of an assault upon his person." 197 U.S. at 26. Following Jacobson, courts have rejected assertions of a right to bodily integrity in the vaccine context and held that there is not a recognized fundamental right to refuse a vaccination. See Klaassen, 7 F.4th at 594 (stating that "[w]e assume with plaintiffs that they have a right in bodily integrity," but finding the plaintiffs failed to assert such a right); Whitlow v. California, 203 F. Supp. 3d 1079, 1089 (S.D. Cal. 2016) ("Unquestionably, imposing a mandatory vaccine requirement on school children as a condition of enrollment does not violate substantive due process."); Kheriaty v. Regents of the Univ. of Cal., et al., 2021 WL 4714664, at *5 (C.D. Cal. Sept. 29, 2021) ("[S]eeking an injunction against an employer mandate to take a vaccine" is not the same as "refusing 'lifesaving hydration and nutrition'"); Williams, 2021 WL 4894264, at *6–7 (rejecting claim that vaccination mandate

implicated a right to bodily integrity); <u>Norris v. Stanley</u>, --- F. Supp. 3d ---, 2021 WL 4738827, at *2 (W.D. Mich. Oct. 8, 2021) (finding that "Plaintiff is absolutely correct that she possesses [fundamental rights to bodily integrity], but there is no fundamental right to decline a vaccination"); <u>Bauer v. Summey</u>, --- F. Supp. 3d ---, 2021 WL 4900922, at *9 (D.S.C. Oct. 21, 2021) (holding that "Plaintiffs' overly general characterization of the rights at issue as 'bodily integrity' or 'privacy' falls short of the required 'careful description' of the liberty interest"); <u>Dixon</u>, 2021 WL 4750187, at *9 (distinguishing between a law that "forc[es] [state residents] to get vaccinated" and one that "merely plac[es] restrictions on those who choose not to").

This authority overwhelmingly supports the conclusion that the Policy does not implicate a right to bodily integrity. The Masseths again make a general claim to a right to bodily integrity. (Mot. at 15–16.) The Masseths do not explain how the Policy's restriction on unvaccinated students—and School Defendants' application of the Policy—forces J.D. to get vaccinated. As the Masseths concede, the vaccination law still provides for medical exemptions. (Mot. at 1–3.) Cal. Health & Safety Code §§ 120370; 120372. In <u>Whitlow</u>, the court held that the <u>removal</u> of SB 277's personal beliefs exemption from SB 277 did not violate "childrens' rights to bodily integrity." 203 F. Supp. 3d at 1089. Here, the Masseths' main contention is that because their current physician's refuses to issue a medical exemption for J.D., School Defendants' application of the Policy violates their fundamental rights. (Masseths Decl. ¶ 7.) Such a position implicates the right to bodily integrity even less than <u>Whitlow</u>. Moreover, the Masseths provide no evidence of the physician's reasons for refusing to issue the exemption, other than their own declaration, nor assert that they have sought other medical opinions or appealed the revocation of the initial exemption. Under these circumstances, the Court cannot conclude that the Masseths are faced with a "Hobson's choice" and forced to vaccinate J.D.[6] (Mot. at 3.)

### 3. Right to Informed Consent

Finally, the Masseths vaguely assert a fundamental right to informed consent. (Mot. at 14.) Once again, however, the Masseths fail to carefully describe the right. In fact, the Motion seems to blend the discussion of informed consent with that of the right to bodily integrity. (Mot. at 16.) The Masseths also provide no authority to support a fundamental right to informed consent. Accordingly, the Court concludes that the Masseths fail to articulate a fundamental right to informed consent. Because the Masseths have not asserted any fundamental right under substantive due process, rational basis applies. This is consistent with the longstanding application of rational basis review to assess mandatory vaccination measures. <u>Klaassen</u>, 2021 WL 3073926, at *24 (listing cases).

//
//
//
//

---

[6] Indeed, the facts seem to demonstrate that the Policy provides the Masseths with alternatives, which they have not sufficiently pursued.

### 4. Application of Review

Under rational basis review, the Court must determine whether the Policy is "rationally related to a legitimate state interest." City of Cleburne, 473 U.S. at 440. The Court notes that neither party has submitted significant evidence on the disputed Policy and places the burden on the Court to discern the Policy's purpose and relationship to the identified interest.[7] Nevertheless, the Court finds that the Policy easily meets the rational basis test.

First, School Defendants have a compelling interest in ensuring the health and safety of its students through enforcement of the mandatory vaccination law. In Jacobson, the Supreme Court held that "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members." 197 U.S. at 27. The California Supreme Court has recognized this same compelling interest since 1890, when it upheld a mandatory smallpox vaccine requirement for school admission. Abeel v. Clark, 84 Cal. 226, 230 (1890) ("The act referred to is designed to prevent the dissemination of what, notwithstanding all that medical science has done to reduce its severity, still remains a highly contagious and much-dreaded disease.").

Federal and California courts that have reviewed the Policy have found that it promotes immunization against childhood diseases. Brown v. Smith, 24 Cal. App. 5th 1135, 1146 (2018) (describing the Policy's purpose as "the eventual achievement of total immunization of appropriate age groups against [specified] childhood diseases" (quoting Cal. Health & Safety Code § 120325(a)); Love v. State Dep't of Educ., 29 Cal. App. 5th 980, 990 (2018) (reviewing SB 277 and holding that "[i]t is well established that laws mandating vaccination of school-aged children promote a compelling governmental interest of ensuring health and safety by preventing the spread of contagious diseases"); Whitlow, 203 F. Supp. 3d at 1089–90 ("There is no question that society has a compelling interest in fighting the spread of contagious diseases through mandatory vaccination of school-aged children."). The Policy's "goal of 'total immunization' has been stated in section 120325 since its passage in 1995." Brown, 24 Cal. App. 5th at 1148.

California has required the pertussis vaccine as a condition of school attendance since 1977. (Mot. at 6.) As the Masseths acknowledge, pertussis continues to pose risks to students and childhood pertussis cases remain on the rise. (Id.; Tucker Decl., Ex. A at 1.) While the Masseths claim that the pertussis vaccine fails to prevent the disease's transmission, their own evidence points to the contrary. One Institute of Medicine ("IOM") report states:

---

[7] The parties' extensive arguments about what case law applies to the asserted rights—and the absence of similar debate about the disputed Policy itself—appears to demonstrate the secondary nature of the Policy to the instant action. The Court notes that School Defendants in particular have submitted evidentiary objections to the Masseths' evidence, but submitted none of their own regarding the Masseths' substantive claims. (See Opp'n.)

> [P]ertussis outbreaks have occurred in recent years in geographic areas with higher concentrations of <u>unimmunized children</u> (Felkin et al., 2000). States with <u>easy procedures for granting exemptions</u> were associated with a <u>90 percent higher incidence of pertussis</u> in 2004.

(Tucker Decl., Ex. F at 43.) (emphasis added). Accordingly, the Policy—and School Defendants' enforcement of it—is rationally related to the protection of public health and safety.

Moreover, the Policy reasonably allows medical exemptions, and School Defendants allow students with medical exemptions under the Policy to attend school. (Masseths Decl., Ex. 1.) Indeed, if the pertussis vaccine would have as dire effects on J.D.'s health and life as the Masseths say it would, she should easily qualify for a medical exemption. Yet, as of the October 25, 2021 hearing, the Masseths have made no effort to pursue a medical exemption throughout these proceedings.[8] Accordingly, School Defendants' enforcement of the Policy against J.D. is not arbitrary.

The Masseths contend that School Defendants cannot have a compelling interest because the pertussis vaccine does not prevent the spread of the pertussis bacteria. (Mot. at 19; Reply at 9.) They assert that <u>Jacobson</u> and its progeny only pertain to contagious diseases and are thus distinguishable. (Reply at 6–7.) But as noted above, there is evidence that the pertussis vaccine prevents transmission. Vaccinations need "not be the best and safest preventive possible" in order for a law mandating them to be upheld. <u>Abeel</u>, 84 Cal. at 230. Moreover, an argument about the pertussis vaccine's efficacy amounts to a "dispute[] over the most reliable science," and the Court will not intervene "as long as [School Defendants'] process is rational in trying to achieve public health." <u>Klaassen</u>, 2021 WL 3073926, at *38 (citing <u>Phillips v. City of New York</u>, 775 F.3d 538, 542 (2d Cir. 2015) ("[P]laintiffs argue that a growing body of scientific evidence demonstrates that vaccines cause more harm to society than good, but as <u>Jacobson</u> made clear, that is a determination for the [policymaker], not the individual objectors.")); <u>see also Jacobson</u>, 197 U.S. at 30 ("We must assume that, when the statute in question was passed, the legislature [ ] was not unaware of these opposing theories, and was compelled, of necessity, to choose between them."); <u>Whitlow</u>, 203 F. Supp. 3d at 1085 ("[T]he wisdom of the Legislature's decision is not for this Court to decide.").

The Masseths insist there is not a "dire need for J.D. to be vaccinated," given that she has attended school for many years without apparent harm imposed on her peers. (Reply at 2.) However, "health authorities are not required to wait until an epidemic exists before acting, but it is their duty to adopt timely measures to prevent one." <u>Whitlow</u>, 203 F. Supp. 3d at 1090 (quoting <u>Mosier v. Barren Cnty. Bd. of Health</u>, 308 Ky. 829, 831 (1948)). As long as there is a rational basis for the School Defendants' current enforcement of the pertussis vaccine against

---

[8] The Masseths aver that J.D.'s physician refused to write her a medical exemption. (Masseths Decl. ¶ 7.) At the October 25, 2021 hearing, counsel for the Masseths stated that this incident took place prior to the filing of the instant Motion and that the Masseths have taken no action to pursue an exemption since then.

J.D., School Defendants may decide when to require J.D.'s vaccination.  The Court finds such a rational basis exists.  Accordingly, the Court concludes the Masseths' first claim under the Fourteenth Amendment is unlikely to succeed on the merits.

### b.  Fourteenth Amendment: Right to Life and Liberty

The Masseths next claim a general violation of their Fourteenth Amendment right to J.D.'s life and liberty.  (Mot. at 16.)  As discussed above, "substantive-due process cases [require] a 'careful description' of the asserted fundamental liberty interest."  <u>Glucksberg</u>, 521 U.S. at 721.  The Masseths' speculative argument that administration of the final dose of the pertussis vaccine may harm or endanger J.D.'s life fails to meet this standard.  The Masseths' argument that the Policy threatens the livelihood and career of physicians who are chilled from issuing medical exemptions also fails.  (Mot. at 17.)  The Masseths do not have standing to assert life and liberty rights on behalf of third-party physicians.  Because the Masseths fail to assert a right, the Masseths are unlikely to prevail on the merits of their second claim.

### c.  First Amendment: Freedom of Religion

The Masseths contend that School Defendants' enforcement of the Policy violates their right to free exercise of religion under the First Amendment.  (Mot. at 20.)  Specifically, they argue that (1) the Policy's enforcement forces them to vaccinate J.D. against their religious beliefs; and (2) the Policy is discriminatory because it provides a non-religious, medical exemption and not a religious exemption.  (<u>Id.</u>)

The Court notes that the Masseths do not say what their sincerely held religious beliefs are.  The Masseths only assert that their "deeply and sincerely held religious beliefs prevent them from injecting their child with a vaccine that they sincerely believe could harm their child." (Mot. at 20.)  A bare assertion of a religious belief is insufficient to establish a religious belief or to distinguish it from a personal belief.  <u>See</u> <u>Middleton v. Pan</u>, 2016 WL 11518596, at *7 (C.D. Cal. Dec. 15, 2016) ("A way of life, however virtuous and admirable, may not be imposed as a barrier to reasonable state regulation of education if it is based on purely secular consideration; to have the protection of the Religion Clauses, the claims must be rooted in religious belief" (quoting <u>Wisconsin v. Yoder</u>, 406 U.S. 205, 215 (1972)).).  Out of an abundance of caution, however, the Court assumes the Masseths sincerely hold a religious belief and proceeds with the analysis.[9]

//
//
//
//



[9] Undoubtedly, "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds."  <u>Hernandez v. Comm'r of Internal Revenue</u>, 490 U.S. 680, 699 (1989).  However, the Masseths must state a faith.

The Free Exercise Clause of the First Amendment, incorporated through the Fourteenth Amendment, prohibits laws "prohibiting the free exercise" of religion.  U.S. Const., amend. I.  The threshold inquiry is whether a challenged law is "neutral or generally applicable."  Employment Div., Dep't of Human Res. of Oregon v. Smith, 494 U.S. 872, 881 (1990).  If a law is neutral and of general applicability, that law "need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice."  Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 531 (1993).  Instead, rational basis review applies.

The Policy is undisputedly a neutral law of general applicability.  The law applies to all schools, public or private, in California and seeks to protect public health and safety.  See, e.g., Resurrection School v. Hertel, 11 F.4th 437, 456 (6th Cir. 2021) (holding that a face covering requirement was "neutral and of general applicability" because it "applied to students in grades K-5 at both religious and non-religious schools").  Accordingly, even if the Policy incidentally burdens the Masseths' religious practice, the Court need only apply rational basis review.  The Court easily finds that requiring California students to receive the pertussis vaccination is rationally related to the protection of students' health and does not violate the Free Exercise Clause.  See Prince v. Massachusetts, 321 U.S. 158, 166–67 (1944) ("The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death."); see also Phillips v. City of New York, 775 F.3d 538, 543 (2d Cir. 2015) ("[M]andatory vaccination as a condition for admission to school does not violate the Free Exercise Clause."); Workman, 419 F. App'x at 353–54 (holding the same).

The Masseths also challenge the Policy's removal of personal belief exemptions as religious discrimination.  However, this argument fails as the Masseths lack standing to assert a claim under this theory.  J.D. has never held an exemption based on her religious beliefs, and School Defendants are not enforcing the revocation of any religious exemptions against J.D.  School Defendants' enforcement of the Policy is based solely on J.D.'s lack of a currently valid medical exemption.  Nor do School Defendants hold any authority to change the Policy to allow for religious exemptions.  Accordingly, the Masseths have not suffered a cognizable injury caused by School Defendants that School Defendants can redress.

Accordingly, strict scrutiny does not apply.  For the same reasons discussed above, the Policy demonstrates a rational basis.  The Court concludes that the Masseths are unlikely to prevail on their First Amendment Free Exercise claim.

### d.  Fourteenth and First Amendments: All Rights Provided

The Masseths final cause of action asserts violations of the Fourteenth Amendment and First Amendment and "[a]ll rights provided thereunder."  (Compl. ¶¶ 109–116.)  This claim suffers from the same fatal flaw as the previous claims: it is a blanket assertion that does not state a recognized fundamental right.  Unless the Masseths identify a specific right, the Court cannot determine the right has been or will be violated.  Accordingly, the Court concludes that this claim is unlikely to succeed on the merits.

## 2. Irreparable Harm

Next, the Masseths must establish that there is a likelihood of irreparable injury absent the Court's grant of the Motion. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011). "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)). However, for the reasons discussed above, the Masseths' constitutional claims are unlikely to succeed. Their claims that the Policy violates their constitutional rights are thus insufficient to establish irreparable harm.

The sole irreparable harm the Masseths assert is that J.D. will be expelled from school and unable to complete her senior year of high school. (Mot. at 11–12; Reply at 11.) However, at the October 25, 2021 hearing, School Defendants stated that they had never communicated to the Masseths or the Masseths' counsel that they planned to pursue expulsion. Even if they did initiate expulsion proceedings, School Defendants noted they must afford due process such that any expulsion would not be immediate. Counsel for the Masseths also confirmed School Defendants' assertion that J.D. is currently enrolled at her high school and attending in-person classes. (Opp'n at 13.) Stated another way, she is enjoying the benefits that would be available to her if she receives the pertussis vaccine. The alleged harm of expulsion is thus illusory. Moreover, neither J.D. nor her parents have acted to receive a medical exemption during this time, which would eliminate any threat of expulsion. These facts fail to demonstrate the requisite "urgency" to invoke the extraordinary remedy of a preliminary injunction. Whitlow, 203 F. Supp. 3d at 1091. Accordingly, the Court concludes that the Masseths have failed to establish J.D. will be irreparably harmed absent an injunction.

## 3. Balance of Equities and Public Interest

Finally, the Court finds that the balance of equities and the public interest weighs heavily against the requested relief. The Masseths assert an individual liberty interest in refusing unwanted treatment. (See Mot.) While their ability to make choices for themselves is important, the calculus changes when their actions have "ramifications to the physical health of others." Klaassen, 2021 WL 3073926, at *24. "Vaccines address a collective enemy, not just an individual one." Id. The Masseths' decision to refuse vaccination for J.D. does not affect them or her alone, but impacts students, teachers, and staff at her high school. More significantly, their choice may place the physical health of her school community at risk.

The Masseths argue that School Defendants do not have a genuine interest in the student body's health, as J.D. has attended the same high school without the final vaccination dose all along. The Court rejects this argument. Prior to this year, School Defendants operated under the assumption that J.D. had a valid medical exemption. As J.D. no longer holds an exemption, School Defendants can reasonably believe J.D.'s unvaccinated status runs counter to their goals of protecting the student body. Moreover, School Defendants have an interest in ensuring the uniform application of their health policies.

Similarly, the Masseths' contention that a preliminary injunction will preserve the status quo fails. As discussed above, the status quo for J.D. remains in place even without a preliminary injunction. To issue the relief the Masseths seek—an injunction that prohibits School Defendants from enforcing the pertussis vaccine mandate for school attendance as to any student—would disturb the status quo.

In sum, the Masseths have failed to establish a serious question going to the merits, a likelihood of irreparable injury, and that the balance of hardships tips sharply toward them and in favor of the public interest. Accordingly, the Court DENIES the Motion.

## V.    CONCLUSION

For the reasons above, the Court DENIES Plaintiffs' Motion.

**IT IS SO ORDERED.**